GEORGE I. NEAL, *Trustee, v.* RUSSELL S. RITZ, *Executor, et al.*

(No. 7168)

Submitted April 26, 1932.   Decided May 3, 1932.

*Fitzpatrick, Brown & Davis* and *John A. Lile,* for appellant.
*Somerville & Somerville,* for appellee Merchants' Nat. Bank
of Point Pleasant.

LIVELY, JUDGE:

On May 1, 1925, F. J. Duvall executed a trust deed on a
parcel of land to secure J. M. Ritz in the payment of four
promissory negotiable notes aggregating the sum of $1,800
(which represented part payment for the realty covered by
the trust deed); and under the provisions of the trust, the
property could not be sold because of default of payment
until maturity and non-payment of the last note.   Duvall
defaulted in the payment of each note, and at the request
of Russell S. Ritz, executor of the estate of J. M. Ritz,
deceased, owner and holder of the third and fourth notes,
the trustee advertised the property for sale, whereupon the
Merchants National Bank of Point Pleasant (hereinafter
called the bank) gave written notice to the trustee that it

held a first lien on the property by reason of an assignment made to it, by the executor, of judgments procured on the first two notes. This proceeding was then instituted by the trustee for determination of the rights of the bank and the executor to the proceeds of the sale of the property; and the circuit court having decreed that the bank was entitled to a first lien against the property, the executor appealed here.

The claim of the bank arose in this manner : Upon maturity and non-payment of the two notes due on May 1, 1926, and May 1, 1927, the executor obtained judgments against Duvall for the respective amounts thereof, abstracts of which were recorded in the county clerk's office in Cabell county, and thereafter the executor instituted a creditor's suit to enforce payment of his judgment liens against Duvall's realty, other than that covered by the instant deed of trust.

At this time, Duvall, a paving contractor, was in financial stress and owed the bank about $6,500, and had executed trust deeds on his property, other than that purchased from Ritz, on January 25, 1927, and June 23, 1927, respectively, to secure payment to the bank; and in addition, Duvall had on the latter date, assigned to the bank the sum of $3,500 out of moneys due him on paving work under contract with the state road commission. Duvall attempted, but failed, to have the creditor's suit delayed; and negotiations which followed between attorneys for the executor and for the bank resulted in the executor's assigning the two judgments in blank, which assignments he forwarded to the bank with draft for $1,094.76 attached. The draft was paid by the bank and the creditor's suit dismissed, although the bank's attorney testified that no mention of dismissal was made in acquiring the assignments, which provided that the executor assigned the judgments "together with the benefit of the lien of said judgment, and all rights and privileges appertaining to said judgment and the lien thereon, including all rights of enforcement and collection; but this assignment is made without recourse, in law or equity, upon or against the assignor."

The bank's claim is that the assignments were secured by it with its money for its benefit, and that the assignments

carried with them not only the notes upon which the judgments were founded but the trust deed lien as well. The executor controverts that proposition of law, and answers that subsequent to the assignments, the judgments were satisfied in full by payment thereof by Duvall to the bank.

Under the evidence, we find merit in this latter contention. It appears from testimony of the bank's cashier that a check issued as payment on Duvall's contract with the state road commission in the amount of $1,295 was deposited in the bank by Duvall and placed to his credit. The bank argues that under the assignment this money belonged to it; but the bank's ownership was conditioned upon application of the money to Duvall's indebtedness to it, for it had been assigned for that specific purpose. The money was not so used. Instead, the bank paid Duvall $200 in cash and honored his check for $1,094.76—the amount of the judgments—which it charged against the deposit. The bank thus diverted the money from the purpose for which the assignment was made; but in doing so, it was discharging liens against Duvall's property which were superior to those effected by the trust deeds executed to secure the bank's debt; hence, it must be said that since the money could be used only for the purpose of paying Duvall's debts, the application of the money in discharging the judgments was an act by the bank for Duvall's benefit. Although Duvall states that his intention was "to take up my notes", it is pertinent that the record does not show any credit on Duvall's indebtedness to the bank of the $1,094.76 charged against his account. We therefore conclude that by payment thus made, the judgments and the liens thereof were extinguished, thus leaving only the notes owned by the executor as liens on the property involved.

Determination of the other ground insisted upon, namely, that the assignment of the judgments and the liens thereof without recourse assigned to the bank the lien of the trust deed—a serious question—is unnecessary.

*Reversed and remanded.*